IRVING BANK-COLUMBIA TRUST CO., RECURRENTE, v. EL REGISTRADOR DE CAGUAS, RECURRIDO.

No. 607.—*Sometido*: Diciembre 11, 1924. *Resuelto*: Diciembre 22, 1924.

REFACCIÓN AGRÍCOLA.—Un contrato por virtud del cual una corporación bancaria presta a otra corporación azucarera, que no se dedica a la siembra de cañas dulces sino a molerlas, cierta suma de dinero, no puede calificarse como de refacción agrícola de acuerdo con la Ley No. 37 de 1910, y por tanto no cometió error alguno el registrador que se negó a inscribirlo como tal en los libros a su cargo.

NOTA de *L. Marqués*, R. (Caguas), denegando inscripción de un contrato de préstamo refaccionario agrícola. *Confirmada.*

*J. H. Brown* y *C. Ruiz Nazario*, abogados del recurrente; el registrador compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El 3 de octubre de 1924, en esta Ciudad de San Juan, P. R., la Caguas Sugar Co., Inc., y la Irving Bank Columbia Trust Co., otorgaron un contrato por virtud del cual la segunda corporación prestó a la primera doscientos cincuenta mil dólares "para la refacción de las cañas de los colonos de dicha Caguas Sugar Co., Inc., y los gastos inherentes a la industria de elaboración de azúcar en su factoría 'Central Defensa' . . . . durante la próxima zafra de 1924–25."

En el contrato se consigna que la Caguas Sugar Co., Inc., es dueña de un derecho de arrendamiento por noventa años constituído a favor de la Central Defensa Inc. sobre una finca de catorce cuerdas situada en Caguas sobre la cual están enclavados los edificios, maquinarias y construcciones que constituyen la factoría para elaborar azúcar denominada Central Defensa. Y se consigna además que la Caguas Sugar Co., Inc., como parte de su negocio de elaborar azúcar ha celebrado un gran número de contratos de refacción y molienda de cañas con agricultores propietarios por virtud de los cuales se comprometió a adelantar sumas de dinero a dichos propietarios para el cultivo de sus tierras garantizadas con los frutos a producir.

Se especifica en el contrato la manera de entregar el dinero prestado y se fija como garantía de su pago un "gravamen primero y preferente . . . . sobre todos los azúcares pertenecientes a dicha deudora, o que puedan pertenecerle, por concepto de beneficio industrial en la molienda de cañas de sus colonos. . . . ." Como garantía colateral la deudora traspasó a la acreedora "todas y cuantas acciones y derechos le correspondan o pudieren corresponderle en los contratos de refacción agrícola y molienda de cañas celebrados con sus colonos, y cede y transfiere asimismo . . . . el montante de todos los anticipos hechos . . . . a favor de sus referidos colonos. . . . ."

La cláusula sexta del contrato dice textualmente: .

"Sexta.—Estipulan las partes, que este préstamo, o cualquier parte del mismo que en cualquier momento resulte entregada a la Caguas Sugar Co., Inc., en consideración a los fines y propósitos a que se destina, y con completa abstracción de la inversión real que a dicho préstamo dé la Caguas Sugar Co., Inc., se conceptuará como un préstamo refaccionario agrícola, y gozará, desde la fecha de su entrega de todas las preferencias y privilegios que a los créditos refaccionarios agrícolas atribuyen y conceden nuestras leyes y especialmente la de diez de marzo de 1910 sobre contratos de refacción agrícola, siembra y molienda de cañas, con sus enmiendas posteriores."

El contrato se presentó para su anotación en el Registro de la Propiedad de Caguas y el registrador se negó a ello, por no tratarse, a su juicio, de "un contrato de préstamo refaccionario agrícola de los definidos en la sección 1ª de la Ley No. 37 de 10 de marzo de 1910."

No conforme la acreedora interpuso el presente recurso gubernativo. Tanto la recurrente como el registrador han expuesto extensamente por escrito sus puntos de vista, pero no citan jurisprudencia alguna. La resolución a que lleguemos dependerá del alcance que demos a la ley que ambas partes están conformes en que es reguladora de este caso, a saber: la No. 37 de 1910, p. 122, Comp. sec. 52.

Dicha ley se titula sobre contratos de refacción agrícola y molienda de cañas y para otros fines.

Entiéndese por contrato de *refacción agrícola,* según la sección primera de la ley, "aquel mediante el cual una de las partes entrega y la otra recibe, con carácter devolutivo, determinadas cantidades en dinero efectivo o en especies, bien de una sola vez o en sucesivas ocasiones, para atender a la administración, sostenimiento, cultivo o mejoramiento *de fincas rústicas,* quedando afectos y gravados *los frutos de las mismas fincas* al pago de las cantidades recibidas, con los intereses acordados.

"En el objeto del contrato podrá comprenderse la implantación y restauración de edificios y maquinarias, *para usos agrícolas e industriales en relación con los cultivos, dentro del perímetro de la finca.*

"Las partes, además podrán consignar en el contrato los pactos lícitos que estimen convenientes." Las itálicas son nuestras. (Comp. sec. 52.)

Según la sección segunda "el pago de las cantidades recibidas *por el terrateniente* será estipulado en dinero efectivo, o en la especie de *frutos rendidos por la finca refaccionada,* dentro del plazo señalado por los contratantes." Las itálicas, nuestras.

Y se conocerá por contratos de *molienda de cañas,* según la sección quinta del estatuto "los verificados entre las factorías e ingenios de azúcar y los llamados 'colonos,' propietarios, poseedores, arrendatarios o subarrendatarios de fincas destinadas en todo o en parte al cultivo de cañas, para la venta o molienda de cañas y elaboración o venta de azúcar."

Se establece además en la ley cómo han de otorgarse y registrarse dichos contratos y sus modificaciones y trasmisiones y se fija la preferencia de que gozan los créditos a que se refieren.

Repetidas veces llama el legislador al deudor, *terrateniente,* y no hay duda alguna, leyendo la ley desde el prin-

cipio hasta el fin, que estuvo fijo en su mente el préstamo hecho a una persona dedicada al cultivo de la tierra.

¿Es la deudora en este caso tal persona?

Es evidente que la negociación verificada guarda relación con el cultivo de la tierra y que finalmente el dinero prestado usado en la compra y sostenimiento de maquinarias, en la construcción y conservación de edificios, en el pago de empleados y trabajadores, en transporte, etc., lo sería para convertir la caña en azúcar y la caña es un producto de la tierra. Y es claro que habiendo sido la intención del legislador la de estimular la producción agrícola rodeando al dinero, cobarde de suyo, de la más completa garantía, a fin de que pudiera ser prestado, el contrato de que se trata cumple tal propósito. Pero aún siendo así y no obstante el criterio liberal que debe aplicarse a casos de esta naturaleza en que ambas partes de común acuerdo solicitan la inscripción y la inscripción no prejuzgaría el derecho de terceros que en caso de conflicto tendría que ser resuelto por los tribunales, nos vemos obligados a sostener la nota recurrida.

No es un caso para el registrador, ni para esta corte, sino para la Legislatura. Dentro de los términos de la ley en vigor no cabe comprender los frutos industriales. Sería necesario adicionar la ley para que abarcara un contrato como el celebrado por la Irving Bank Columbia Trust Co., y eso sólo puede hacerlo la Legislatura.

La Caguas Sugar Co., Inc., no se dedica a la agricultura. No siembra cañas; las muele y con su jugo fabrica azúcar. Los contratos celebrados por la Caguas Sugar Co. Inc., sí que son contratos de refacción agrícola y dichos contratos fueron traspasados al acreedor. Sobre la inscripción de dichos contratos en el registro no versa este recurso. Para asegurar la parte que como fruto industrial corresponda al deudor, quizá pueda encontrar el acreedor algún otro medio en la ley, pero en manera alguna ese medio, mientras el estatuto especial sobre la materia subsista en la forma en que está actualmente redactado, podrá ser el de calificar

el contrato como de préstamo agrícola, y obtener su inscripción en el registro.

*Debe confirmarse la nota recurrida.*